IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MERLE LINDER,

          Plaintiff,

   v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

          Defendant.

Civ. No. 06-6221-AA
OPINION AND ORDER

---

Kathry Tassinari
Brent Wells
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, Oregon 97401
    Attorneys for plaintiff

Karin Immergut
United States Attorney
District of Oregon
Neal Evans
Assistant United States Attorney
1000 S.W. Third Avenue
Portland, Oregon 97204-2902

David R. Johnson
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901

Page 1 - OPINION AND ORDER

Seattle, Washington 98104-7075
    Attorneys for defendant

AIKEN, Judge:

Plaintiff Merle Linder brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income payments (SSI) under Title XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g), 1383(c)(3). The Commissioner's decision is affirmed and the case is dismissed.

## BACKGROUND

Linder was born November 27, 1964. Tr. 60.[1] She completed the ninth grade and worked as a flagger, taxi driver, motel housekeeper and waitress. Tr. 70, 75. Linder alleges disability due to bipolar disorder, post traumatic stress disorder (PTSD), depressive disorder, obesity, degenerative disc disease, patellar dislocation, degeneration of the right knee, and voice box changes. She filed for disability on July 13, 2000, alleging disability since July 1, 1993. Her application was denied initially and on reconsideration. A hearing was held before and Administrative Law Judge (ALJ) who issued an opinion on July 26, 2002, finding her not disabled. This decision was not appealed.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

Linder filed another application January 30, 2003, and her claim was denied initially and on reconsideration. A hearing was held on January 10, 2006, and she amended her date of disability onset to January 30, 2003. The ALJ issued an opinion on May 24, 2006, finding Linder not disabled, which is the final decision of the Commissioner.

### DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. 20 C.F.R. § 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by her impairments. 20 C.F.R. § 416.945; Social Security Ruling

(SSR) 96-8p.  Linder challenges the ALJ's determination of her RFC.  At step four, the Commissioner must determine whether the claimant retains the RFC to perform work she has done in the past.  If the ALJ determines that she retains the ability to perform her past work, the Commissioner will find the claimant not disabled.  20 C.F.R. § 416.920(f).  The ALJ found Linder was unable to perform her past relevant work.

At step five, the Commissioner must determine whether the claimant can perform work that exists in the national economy.  Bowen v. Yuckert, 482 U.S. at 142; 20 C.F.R. § 416.920(e), (g).  The burden of production shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do.  Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).  If the Commissioner meets this burden, then the claimant is not disabled.  Id., 20 C.F.R. § 416.966.  Linder challenges the ALJ's determination that she can perform other work in the national economy and is not disabled.

## THE ALJ's FINDINGS

The ALJ found the medical evidence established Linder has severe impairments as follows: asthma due to smoking, back pain, bipolar disorder, chronic knee pain, anxiety, and obesity.  Tr. 14.  He found these impairments did not meet or equal the criteria for a listed impairment.  See 20 C.F.R. Part 404, subpt. P, app. 1.  The ALJ determined Linder retained the following RFC:

> . . . to perform sedentary exertional activity, with lifting and carrying limited to 10 pounds occasionally and frequently, walking limited to one block, no standing for prolonged periods, moderate limitations with bending or reaching above shoulder level, no crawling or climbing of ladders and the necessity to avoid excessive dust or fumes and extremes of temperature. The claimant is mentally moderately limited in following detailed instructions, in maintaining attention and concentration for extended periods and interacting with the public.

Tr. 15.

The ALJ elicited testimony from an impartial vocational expert (VE). Tr. 381-386. The ALJ asked the VE whether an individual of Linder's age, education, experience, and RFC could perform work that exists in significant numbers in the national economy. The VE responded the individual could perform work as a document sorter, soft goods sorter, and label coder. Tr. 384-385. The VE noted that these jobs would also allow a sit/stand option. The ALJ noted the VE's testimony was consistent with the information in the Dictionary of Occupational Titles. The ALJ determined Linder could make a successful adjustment to work that exists in significant numbers in the national economy and was not disabled within the meaning of the Social Security Act. Tr. 18.

## **STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means

Page 5 - OPINION AND ORDER

. . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence and resolving ambiguities. Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

## DISCUSSION

Linder alleges the ALJ erred in determining her RFC and improperly assessed the severity of her symptoms. She also asserts the ALJ erred in finding her able to perform work in the national economy.

### I. Medical Background

Linder was evaluated by Dr. Smolen in June 1996, and diagnosed with bipolar disorder and methamphetamine dependency in remission. Tr. 132-133. Dr. Smolen examined Linder on January 9, 2001, and diagnosed bipolar disorder, PTSD, and assigned a

Page 6 - OPINION AND ORDER

Global Assessment of Functioning (GAF) of 40.[2]  Tr.  129-131. Linder started counseling with Gary Compton at Linn County Mental Health Services (LCMHS) where he noted Linder's medications were changed.  Compton noted that Linder went in and out of treatment and on and off medications.  He also noted she reported abusing alcohol during manic episodes in order to self-medicate.  Compton found Linder had functional impairments in social relations and productivity.  Tr.  123-128.

Dr. Hein  evaluated Linder on March 15, 2002, for complaints of a possible stroke and facial numbness and drooping.  Dr. Hein determined Linder had not had a myocardial infarction, was a binge drinker, and ordered a CT scan.  Tr.  178.  Dr. Blake, Linder's primary care physician, examined her on March 28, 2002, and noted she had a normal head CT scan and normal echocardiogram. Tr.  177.  He decided to wait for more objective findings before proceeding further, noting, "her facial numbness is highly subjective in a patient who is a high utilizer of medical resources."  Id.  Dr. Blake treated Linder on August 6, 2002, for right knee sprain, and noted the sprain was compounded

---

[2] The GAF is a scale from 1-100, in ten point increments, that is used by clinicians to determine the individual's overall functioning.  A GAF of 31 to 40 indicates some impairment in reality testing or communication OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood.  (e.g., depressed man avoids friends, neglects family and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).  The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 34 (4th ed. 2000).

by obesity and muscle weakness. Tr. 176. He recommended a knee brace and diet consultation.

Linder was treated for an unintentional drug and alcohol overdose on October 5, 2002. Tr. 184-186, 236-238. She was referred back to LCMHS for treatment. Linder injured her right knee at work in October 2002. She was to be off work for a week due to knee sprain. Tr. 183, 229-232. Knee x-rays indicated early degenerative joint disease. Id. Dr. Wobig, her orthopedic surgeon, examined her knee on December 12, 2002, and noted the possibility of a meniscus tear. He recommended she not return to work until after an MRI was obtained. Tr. 250. Linder's MRI indicated large joint effusion, tricompartment degenerative joint disease, lateral subluxation of the patella, and no frank tears of the meniscus. Dr. Wobig recommended a brace, strengthening exercises, and physical therapy. Tr. 249, 251-252.

On March 18, 2003, Dr. Smolen examined Linder and added a diagnosis of panic attacks with agoraphobia, assigned a GAF of 38, and prescribed Trazodone for sleep. Tr. 119-122. Dr. Smolen noted in May 2003, that Linder had stopped taking her medications. He noted further that the medications had stabilized Linder's moods and allowed her to sleep. Tr. 288.

Dr. Gripekoven, a workers' compensation consultant, conducted an evaluation of Linder's right knee in April 2003. Tr. 135-143. He diagnosed right knee sprain, physiologic valgus alignment knees, bilateral, with lateral subluxation of the

Page 8 - OPINION AND ORDER

patella.  Dr. Gripekoven noted early compartment degenerative arthritis, which he believed was the cause of most of her knee problems.  He recommended conservative treatment, noting a knee replacement would be problematic due to her size, knee alignment, use of tobacco, and young age.  Linder was discharged from physical therapy on June 5, 2003, due to "no-shows" for appointments.  She failed to report to her appointments following an initial evaluation.  Tr.  212, 217.  Dr. Blake treated Linder for chronic back pain in October 2003.  He ordered x-rays and noted she had normal range of motion, normal testing, and determined the pain was probably mechanical in origin.  Tr.  172.  The x-rays revealed spondylolysis at L-5, and degenerative joint disease at L5-SI and L1-2.  Tr. 306.

Dr. Smolen completed an evaluation of Linder for the state agency in December 2003.  Tr.  189-194.  He diagnosed bipolar disorder, most recent episode depressed, PTSD, panic attacks with agoraphobia, methamphetamine dependence in remission, and a GAF of 40.  Dr.  Smolen noted Linder would be able to understand, remember, concentrate and attend when not under stress, however, under stress, would not do as well.  He further noted Linder could handle her finances.  Id.

Linder returned to LCMHS on January 12, 2004.  Tr. 281-285.  Compton noted, "I have seen very little of Merle over the last year . . . Merle is very resistive to consistent treatment . . . she is requesting primarily medication management but I also feel

Page 9 - OPINION AND ORDER

she will need some counseling to deal with the barriers that keep her from maintaining treatment." Tr. 284. On January 27, 2004, Dr. Smolen changed Linder's medication to Lithium. Tr. 280.

Linder's medication refills were denied in May 2004, because she failed to follow up with appointments after January. Tr. 279. The notes indicate Linder had done the same thing the previous year when she ran out of medications. She would schedule an appointment, get the medications, and then fail to show up for the appointment. Linder returned to the clinic only when out of medications. She was discharged from services at LCMHS in October 2004, for "noncompliance with rules and regulations." Tr. 275-278. It was noted that she had made some progress with her objectives but did not follow through with medication management and participation in treatment. Linder was treated in December 2004, for a nasal fracture following a family altercation, and Dr. Blake prescribed Lexapro for situational depression. Tr. 291, 295.

Linder had right knee arthroscopy in April 2004. She fell at the hospital on the day of her release and experienced ongoing problems. Tr. 207-211, 244-248. Dr. Wobig performed a second patella femoral ligament reconstruction surgery in June 2004. Tr. 201-203. Five weeks after surgery Dr. Wobig noted Linder had no significant discomfort, could be out of her brace and was doing well. Tr. 243. In August 2004, Dr. Wobig noted Linder was doing fine but needed to continue her physical therapy and

Page 10 - OPINION AND ORDER

exercise. Linder requested a prescription for vicodin for knee pain from Dr. Blake on October 13, 2004. Tr. 296. Dr. Wobig examined Linder on October 27, 2004 and discussed the options of knee replacement and patellectomy. He referred her to Dr. Coen and gave her a prescription for Ultram. Tr. 241. Dr. Coen examined Linder in November 2004, and discussed her surgical options. He noted her smoking and weight made the procedures risky. Tr. 240-241.

Dr. Blake completed a job search form for Linder on February 16, 2005. He stated, "I see no reason why she can't participate in job search activities or job training." Tr. 325. Regarding her request for a hysterectomy for abdominal pain, Dr. Blake noted, "there is so much functional overlay in this patient, and she has historically a very low pain threshold, I don't think referral for hysterectomy is the best way to go unless she develops some objective findings." Id.

In March 2005, Dr. Blake prescribed methadone for Linder's knee problems noting that her surgical options of knee replacement or patellaectomy were not good alternatives. He opined that although she needed to lose weight and stop smoking, she had few coping skills and was under stress. Tr. 325. Dr. Blake started Linder on Tegretol for her bipolar disorder in April 2005, because Linder did not like Lithium. He noted Linder was doing well on the methadone and was not in much pain. Tr. 324. Linder did not like Tegretol and asked Dr. Blake to change

Page 11 - OPINION AND ORDER

her medication back to Lithium.  Dr.  Blake changed her prescription in September 2005, noting she was not consistent with her medications.  He also noted she was anxious and under a lot of stress due to family problems. Tr. 322.  Dr. Blake noted Linder wanted x-rays taken of her back because of a fall off the couch.  He agreed but stated, "we have someone who is overweight, out of shape, with a fairly minor injury causing muscle spasms." Id.

In October 2005, Dr. Blake noted the Lithium was stabilizing Linder's moods, however, Linder stated it was "chronically boring."  He suggested Linder return to LCMHS for counseling. Tr. 322.  Dr. Blake reviewed Linder's back x-ray and noted the treatment regimen was weight loss, exercise, and physical therapy.  A spinal fusion was not indicated due to co-morbidities.  Tr. 321.  A report from Dr. Robertson on January 18, 2006, noted poorly controlled laryngopharangeal reflux was the cause of her hoarseness and he recommended a course of Prevacid.  Tr. 351-352.

## II. RFC Determination

### A. Credibility

Linder asserts the ALJ failed to properly evaluate her testimony regarding her symptoms.  The ALJ must assess the credibility of the claimant regarding the severity of symptoms when the claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to

Page 12 - OPINION AND ORDER

produce the symptoms.  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996).  Linder has medically determinable impairments which could produce her symptoms.  When there is an underlying impairment and no evidence of malingering, an ALJ may discredit a claimant's testimony regarding the severity of symptoms only by providing clear and convincing reasons based on specific findings.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).

In assessing credibility, the ALJ may consider objective medical evidence, including the claimant's treatment history and any aggravating factors.  Smolen v. Chater, 80 F.3d at 1284-1285; SSR  88-13.  The ALJ found Linder's assertion she was unable to perform any work inconsistent with her treatment record.  Tr.  15-16.  The ALJ cited Dr. Blake's finding that Linder's back injury was fairly minor, however aggravated by her weight and poor conditioning.  Tr. 15, 322.  The ALJ further noted that plaintiff's knee condition and pain were aggravated by her obesity and smoking.  Drs. Blake and Coen found plaintiff's obesity and smoking clinically based reasons to defer further knee surgery.  Tr. 240, 325.  Nonetheless, the ALJ found plaintiff's combination of knee condition, back pain and obesity restrictive and therefore limited her to sedentary work.  The ALJ noted Linder was on methadone for her chronic pain.  The medical record indicates the methadone controlled her pain.  Tr. 324.  Linder testified regarding her anxiety level.  However, the ALJ

Page 13 - OPINION AND ORDER

noted the record indicated that her anxiety was exacerbated during periods of family stress.

The ALJ may also consider any unexplained failure to seek treatment or follow a prescribed course of treatment. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); SSR 88-13. The ALJ noted Linder's bipolar disorder was stable when she was compliant with her medications, but that she was only intermittently compliant with her medications. Tr. 16. Dr. Smolen noted the medications stabilized Linder's moods and allowed her to sleep at night. Tr. 288. Dr. Blake also noted Linder's moods were stabilized with Lithium although Linder found it "chronically boring." Tr. 322. Linder's noncompliance with medication management was one of the reasons she was discharged from services at LCMHS. The ALJ also noted her many missed appointments. Linder was discharged from physical therapy and from counseling services for missed appointments. The ALJ did note that plaintiff testified she was unable to leave the house some days without someone going with her. Tr. 16.

The ALJ may also consider the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge about the claimant's functional limitations. Thomas v. Barnhart, 278 F.3d 947, 958-959 (9th Cir. 2002). The ALJ relied on Linder's treating physician, Dr. Blake, who stated she was able to participate in job search activities and job training. The ability to participate in these activities

Page 14 - OPINION AND ORDER

would indicate an ability to work, contrary to Linder's statement.  Linder argues that Dr. Blake's opinion is not evidence that she can sustain work and that it is the agency's burden to prove she can sustain work.  However, the burden of proving entitlement to disability benefits rests on Linder. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  Dr. Blake's opinion regarding her functional abilities and limitations are appropriate to consider in a credibility analysis.  Thomas v. Barnhart, 278 F.3d at 958-959.

 The ALJ may also employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid. Smolen v. Chater, 80 F. 3d at 1284.  The ALJ noted Linder testified she used a cane and knee brace to walk but appeared at the hearing without either device.  The ALJ also noted Dr. Blake found Linder had a substantial amount of "functional overlay" causing him to delay medical procedures until there existed objective findings to support treatment.  Linder argues that functional overlay means an "emotional overlay" to her physical conditions, due to her mental impairments, and is not a reason to challenge her credibility.  The Commissioner argues functional overlay can mean an exaggeration of symptoms.

 Functional overlay is defined as "an emotional aspect of an organic disease.  It may occur as an overreaction to an illness

Page 15 - OPINION AND ORDER

and is characterized by symptoms that continue long after clinical signs of the disease have ended." <u>Mosby's Medical, Nursing, and Allied Health Dictionary</u>, 665 (5th ed. 1998). The ALJ may draw reasonable inferences from the evidence. <u>Gallant v. Heckler</u>, 753 F. 2d 1450, 1453 (9th Cir.1984). It is reasonable to infer from the definition quoted above and from Dr. Blake's notes that functional overlay meant an exaggeration of symptoms. A history of symptom exaggeration is one reason to not fully credit symptom testimony. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ gave clear and convincing reasons for rejecting Linder's assertions regarding her inability to work. The ALJ's duty is to assess credibility and he did so based on substantial evidence in the record.

**B.  Obesity**

Linder asserts the ALJ erred by not fully addressing the limitations created by her obesity in her RFC. However, the ALJ determines an RFC based upon functional limitations for which there is an adequate record. The ALJ found Linder's obesity was a severe impairment. He noted the effect of Linder's obesity on her back pain and knee condition and determined the combined effect of these conditions limited her to sedentary work. There are no other functional limitations related to her obesity in the record. The ALJ is not required to include limitations in an RFC

he found neither credible nor supported by the record. Bayliss v. Barnhart, 427 F.3d 1211,1217 (9th Cir. 2005).

### IV.  Step Five Determination

Linder asserts the ALJ erred at step five for discounting her limitations and not proving she could work a full day. She asserts if her testimony regarding her limitations were credited she would be found unable to work. Linder testified she needed to lie down several times a day due to back and knee pain, and her mental impairments would cause missed days of work. Linder cites the testimony of the VE that none of the identified jobs would allow an employee to lie down several times during the day or have a high rate of absenteeism. She argues these limitations should have been included in her RFC and the hypothetical question given to the VE. VE testimony based on a hypothetical question that does not reflect all of the claimant's limitations has no evidentiary value. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)(internal citations omitted).

The ALJ, however, evaluated the evidence and reached an RFC assessment that reflected the limitations the evidence reasonably supported. He did not find Linder had an impairment that resulted in a need to lie down several times during the day or frequently miss work. The ALJ was not required to pose a hypothetical that contained limitations he did not find were supported by substantial evidence in the record. Osenbrock v. Apfel, 240 F.3d 1157, 1164-1165 (9th Cir. 2001). The ALJ

Page 17 - OPINION AND ORDER

appropriately elicited testimony from the VE with a hypothetical question that included all of Linder's limitations articulated in her RFC assessment. The VE testified that there were jobs existing in the national economy that Linder could perform based on her RFC, age, education, and experience. Tr. 384-385. The ALJ properly relied on the VE's answer to a hypothetical that contained all of the limitations supported by substantial evidence. Bayliss v. Barnhart, 427 F. 3d at 1217-1218.

Linder also asserts that the Commissioner has the burden of proving she is capable of working eight hours a day and performing the jobs identified by the VE. However, the burden of proving disability, including an inability to work a regular work week, rests with the claimant. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999)  At step five, the burden of production shifts to the Commissioner to show there are jobs which exist in the national economy the claimant can perform given her age, experience and RFC. Tackett v. Apfel, 180 F.3d at 1100. The Commissioner can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all of claimant's limitations. Roberts v. Shalala, 66 F.3d at 184. The ALJ asked the VE whether there were jobs Linder could perform given her RFC, age, and experience. The VE testified there were.

The ALJ found Linder was able to perform work that exists in the national economy and is not disabled. The ALJ's decision is

free of legal error and based on substantial evidence in the record.

## **CONCLUSION**

The Commissioner's decision is based on substantial evidence, and is therefore, affirmed.  This case is dismissed. IT IS SO ORDERED.

Dated this  29  day of May 2007.


                  /s/ Ann Aiken
                    Ann Aiken
            United States District Judge